IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IVAN MESHCHERIAKOV, Individually, and on behalf of himself and other similarly situated plaintiffs,<br><br>  Plaintiff,<br><br>v.<br><br>INTROL SOLUTIONS, d/b/a Introl,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 2:25-cv-02071-SHL-cgc<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL
PLAINTIFF TO ARBITRATION AND STRIKE/DISMISS CONSENT FORMS**

  Before the Court is Defendant Introl Solutions' Motion to Compel Plaintiff to Arbitration and Strike/Dismiss Consent Forms, or, Alternatively, to Compel Three Individuals to Arbitration and Dismiss/Compel 33 Others, filed October 1, 2025. (ECF No. 48.) Introl seeks to compel Plaintiff Ivan Meshcheriakov to arbitration, stay the case, and strike or dismiss the thirty-nine opt-in plaintiffs who have filed consent forms as of the date of the Motion. (Id. at PageID 210.) Meshcheriakov responded on October 29. (ECF No. 51.) Introl replied on November 12.[1] (ECF No. 53.) For the reasons stated below, the Motion is **GRANTED IN PART**.

---

[1] Pursuant to Local Rule 7.2(c) and the Scheduling Order in this case (ECF No. 47 at PageID 209), a reply may not be filed without a court order granting a motion for leave to reply. An exception is made for motions to dismiss under Local Rule 12.1(c), and the Parties did file a joint motion requesting that Local Rule 12.1 govern this Motion to Compel Arbitration due to its dispositive nature (ECF No. 50). However, that motion was still pending at the time Introl filed its reply, and thus the reply was not authorized. Because it filed a motion seeking to, in effect, file a reply, the Court will consider the reply even though the motion was never granted.
 Also, because this Order grants in part Defendant's Motion to Compel Arbitration and stays the case, the Court **DENIES AS MOOT** the Joint Motion for Local Rule 12.1 Briefing Schedule and Page Limit Requirements to Govern Defendant's Motion to Compel Arbitration, Strike/Dismiss Consent Forms or Dismiss. (ECF No. 50.)

## BACKGROUND

Meshcheriakov was hired by Introl to install low-voltage equipment, primarily fiber cable, for the construction of data centers. (ECF No. 21 at PageID 81, 86.) He contends that Introl misclassified him and other similarly situated workers as independent contractors while also failing to pay them overtime in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"). (Id. at PageID 80–81.) Along with many of the opt-in plaintiffs in this putative collective action, Meshcheriakov recently arrived in this country as a refugee of the Russo-Ukrainian war. (Id. at PageID 87.) He states that, at the time he signed his contract, he could not speak or read English. (ECF No. 51 at PageID 609.)

As of the filing of the Motion, thirty-nine similarly situated "fiber techs" had filed consent forms to join Meshcheriakov in this action.[2] (ECF No. 49 at PageID 582.) Although different groups of individuals signed different contracts with varying terms, Meshcheriakov and thirty-six out of thirty-nine opt-in plaintiffs apparently all signed contracts with an arbitration provision.[3] (Id.) Meshcheriakov himself, along with three of the would-be plaintiffs, signed a contract with the following provision (the "2023 Arbitration Agreement"):

> This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas. The prevailing party in any proceeding to resolve a dispute pertaining to matters covered under this Agreement shall be entitled to receive reasonable fees by the opposing party.
> or
> Any disputes concerning this Agreement will be submitted to binding arbitration in accordance with the American Arbitration Association.

---

[2] Two more opt-in plaintiffs have since filed their own consent forms. (ECF No. 52.) Because this Order stays the case pending arbitration, the claims of these opt-in plaintiffs are likewise stayed.

[3] Introl asserts that, out of the three remaining opt-in plaintiffs—Yevhen Filippov, Desha Ardoin, and Anderson West III—Filippov had an as-yet-unknown contractual relationship with Introl, while Ardoin and West were not employed by Introl in the first place, but instead by third-party staffing companies. (ECF No. 49 at PageID 582 n.4.)

(Id. at PageID 583; ECF No. 51 at PageID 608.)

Thirty-one other individuals signed a second version (the "2024 Arbitration Agreement"), which removed the reference to Texas law and invoked solely the provisions of the American Arbitration Association ("AAA"):

> Any controversy between the Parties to this Agreement involving the construction or application of any of the terms, provisions, or conditions of this Agreement, shall on written request of either party served on the other, be submitted first to mediation and then if still unresolved to binding arbitration. Said mediation or binding arbitration shall comply with the provisions of the American Arbitration Association for Commercial Disputes unless the Parties stipulate otherwise.

(ECF No. 49 at PageID 583–84.) The 2024 Arbitration Agreement also forecloses the possibility of a collective action, as follows:

> To the maximum extent permitted by applicable law, the Parties agree to only bring disputes in an individual capacity and shall not: (a) seek to bring, join, or participate in any class or representative action, collective or class-wide arbitration, or any other action where another individual or entity acts in a representative capacity (e.g., private attorney general actions); or (b) consolidate or combine individual proceedings or permit an arbitrator to do so without the express consent of all parties to this Agreement and all other actions or arbitrations.

(Id.)

Finally, two opt-in plaintiffs signed yet another version (the "2025 Arbitration Agreement"), which states:

> Contractor and Introl expressly acknowledge and agree to submit to final and binding arbitration all claims, disputes or any other matters relating to or arising out of (i) this Agreement, or the interpretation, application or enforcement of its terms, and (ii) Contractor's performance of Services for Introl, including, without limitation, any claims arising under the common law and/or any federal, state or local, statutes, regulations, executive orders or laws ("Covered Disputes").

(Id. at PageID 585.) The 2025 Arbitration Agreement, like the 2024 version, also waives the individuals' right to collective actions, as follows:

3

> Except where prohibited by applicable law, both Introl and Contractor agree to bring any Covered Dispute in arbitration on an individual basis only, and not on a class, collective or representative basis. There will be no right or authority for any Covered Disputes to be brought, heard or arbitrated as a class, collective or representative action, or as a member in such class, collective or representative proceeding.

(Id.)

Introl seeks to enforce these provisions by compelling Meshcheriakov, the only named plaintiff in this case, to arbitration. (Id. at PageID 586.) Then, in the absence of any named plaintiff, Introl seeks to strike the thirty-nine consent-to-join forms and dismiss all opt-in plaintiffs. (Id.) In response, Meshcheriakov argues that his contract is unenforceable because it is both substantively and procedurally unconscionable. (ECF No. 51 at PageID 607–10.)

## ANALYSIS

"By its terms, the [Federal Arbitration] Act ["FAA"] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). When the threshold question of "arbitrability" is at issue, an arbitration agreement's incorporation of the AAA Rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 846 (6th Cir. 2020) (citation omitted). Further, when a party has agreed to arbitrate the validity of a contract, any challenge to the validity of the contract as a whole—such as by arguing the defense of unconscionability—must be submitted to arbitration. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 72 (2010). Finally, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

4

Introl argues that Meshcheriakov signed a valid arbitration clause, and thus the Court should stay this case and compel arbitration. (ECF No. 49 at PageID 589–90.) In reply to Meshcheriakov's argument that the arbitration clause is unenforceable as unconscionable, Introl contends that even the question of enforceability is not one for this Court, but for the arbitrator, for two reasons. (Id. at PageID 590–92.) First, the 2023 Arbitration Agreement incorporated the AAA rules by stating that arbitration would be conducted "in accordance with the [AAA]," and, in the Sixth Circuit, an invocation of AAA rules is a "clear and unmistakable" evidence of the parties' intent to arbitrate "arbitrability." (ECF No. 49 at PageID 591 (quoting Blanton, 962 F.3d at 846).) Second, under Rent-A-Center, unless a party "challenges the delegation provision specifically," a court must "leave any challenge to the validity of the Agreement as a whole for the arbitrator." (ECF No. 53 at PageID 626 (quoting 561 U.S. at 72 (citation modified)).) Thus, Introl argues that the Court must stay Meshcheriakov's case for a determination by the arbitrator.

Further, according to Introl, once Meshcheriakov has been compelled to arbitrate, the thirty-nine opt-in plaintiffs must be dismissed because, "without a viable claim, Plaintiff cannot represent others whom he alleges are similarly situated." (ECF No. 49 at PageID 593 (quoting White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 878 (6th Cir. 2012) (citation modified)).)

In the alternative, if the thirty-nine others are not dismissed, Introl argues that the three individuals bound by the 2023 Arbitration Agreement[4]—not counting Meshcheriakov, who signed the same agreement—should first be compelled to their own individual arbitrations. (ECF No. 49 at PageID 594.) Then, the thirty-one individuals who signed the 2024 Arbitration

---

[4] The three would-be plaintiffs who signed the 2023 Arbitration Agreement are Kristians Zaluckis, Mykhailo Meshcheriakov, and Maksim Kuts. (ECF No. 49 at PageID 594 n.13.)

5

Agreement should be dismissed, according to Introl, because they agreed to arbitrate their claims exclusively in either Houston, Texas, or Chicago, Illinois.  (Id. at PageID 595.)  Similarly, Introl contends that the two remaining would-be plaintiffs who signed the 2025 Arbitration Agreement should be dismissed because they agreed to the exclusive jurisdiction of certain state and federal courts in Illinois.  (Id. at PageID 595–96.)

In response, Meshcheriakov does not address Introl's arguments, but instead asserts that each of the contracts is both substantively and procedurally unconscionable.  (ECF No. 51 at PageID 607–12.)  For example, he contends that his own contract, containing the 2023 Arbitration Agreement, is substantively unconscionable because the 2023 Arbitration Clause includes a disjunctive "or," which allows Introl "to opportunistically apply either Texas law or [AAA] rules," and procedurally unconscionable because Meshcheriakov, a non-English speaker, relied on an Introl manager's representation that the contract's terms written in English were "standard for working in the United States."  (Id. at PageID 607–10.)  He makes similar arguments as to the 2024 and 2025 contracts.  (Id. at PageID 611–12.)  As a result, he contends that the consent forms of the opt-in plaintiffs should not be struck or dismissed.  (Id. at PageID 612.)

The Supreme Court confronted a similar issue in Rent-A-Center, where a plaintiff argued that his contract containing an arbitration clause was unenforceable as unconscionable.  561 U.S. at 66.  The Court explained that an arbitration clause is indeed severable from a contract, so, if the arbitration clause proved unconscionable, a court need not compel arbitration.  Id. at 70.  However, when the plaintiff fails to argue for the severability of the arbitration clause, but instead argues that the entire agreement is unconscionable, then that argument "does not prevent a court from enforcing a specific agreement to arbitrate."  Id.  In Rent-A-Center, the plaintiff did

6

not "even mention the delegation provision," but instead argued that "the *entire agreement* seems drawn to provide [defendant] with undue advantages." Id. at 73. As a result, the agreement was enforced and the plaintiff was compelled to arbitration. Id. at 76.

Here, similarly, Meshcheriakov argues that the "2023 Agreement is substantively unconscionable" but fails to single out the delegation clause itself—the provision in the 2023 Arbitration Agreement that states, "Any disputes concerning this Agreement will be submitted to binding arbitration in accordance with the [AAA]." (Id. at PageID 583; ECF No. 51 at PageID 608.) Instead of asserting that this delegation clause is unconscionable, he argues that the disjunctive "or" preceding it gives Introl an "opportunisti[c]" advantage in its choice of law. Under Rent-A-Center, this showing is insufficient for a court to refuse to enforce the arbitration clause. As a result, the arbitrator, not the Court, will decide the threshold issue of unconscionability. Also, to the extent that there is room for the Parties to argue both sides of this issue, "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." Stout, 228 F.3d at 714.

Likewise, the three opt-in plaintiffs bound by the 2023 Arbitration Agreement—Kristians Zaluckis, Mykhailo Meshcheriakov, and Maksim Kuts—are also compelled to their own individual arbitrations, should they wish to pursue them. (ECF No. 49 at PageID 594.)

As to the remaining opt-in plaintiffs who signed the 2024 and 2025 Arbitration Agreements, because Meshcheriakov, the only named plaintiff, will be compelled to arbitrate, the Court does not consider the remaining opt-in plaintiffs' consent forms. See White, 699 F.3d at 878 ("Without a viable claim, Plaintiff cannot represent others whom he alleges are similarly situated." (citation modified)); Hutchins v. Great Lakes Home Health Servs., Inc., No. 17-CV-10210, 2017 WL 3278209, at *3 (E.D. Mich. Aug. 2, 2017) ("Having dismissed the only named

7

Plaintiff prior to certification of a collective action, the court does not consider the opt-in form filed by putative class member Laura Beth Hicks."). Yet, because these opt-in plaintiffs are described as "party plaintiff[s]" in the FLSA, 29 U.S.C. § 216(b), with no lesser status than a named plaintiff, they will not be dismissed. See Clark v. A&L Homecare & Training Ctr., LLC, 68 F.4th 1003, 1009 (6th Cir. 2023) ("[S]imilarly situated employees who join an FLSA action become parties with 'the same status in relation to the claims of the lawsuit as do the named plaintiffs.'" (citation omitted)). Instead, the case will be stayed as to all parties, including the opt-in plaintiffs.

## CONCLUSION

For the reasons stated above, the Motion is **GRANTED IN PART**. Meshcheriakov is **COMPELLED** to arbitrate all pending claims against Introl, and the matter is **STAYED** pending the outcome of binding arbitration pursuant to 9 U.S.C. § 3. The Parties shall file a joint status report within thirty days after the completion of the arbitration.

**IT IS SO ORDERED,** this 14th day of January, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE